Michael P. Cooley (TX Bar No. 24034388)
Keith M. Aurzada (TX Bar No. 24009880)
Taylre C. Janak (TX Bar No. 24122751 )
**REED SMITH LLP**
2850 N. Harwood Street, Suite 1500
Dallas, TX  75201
T:  469.680.4200
F:  469.680.4299
mpcooley@reedsmith.com
kaurzada@reedsmith.com
tjanak@reedsmith.com

*Proposed Counsel to the Debtors*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| Fossil Creek A2A Developments, LLC | § Case No. 25-40917 |
| Windridge A2A Developments, LLC | § Case No. 25-40920 |
| | § |
| Debtors. | § |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) CONFIRMING THE AUTOMATIC STAY APPLIES TO ALL ASSETS OF THE DEBTORS WHEREVER LOCATED;(II) EXTENDING THE AUTOMATIC STAY TO DEBTOR PROPERTY HELD IN THE NAME OF NONDEBTOR ENTITIES; OR (III) IN THE ALTERNATIVE, IMPOSING THE AUTOMATIC STAY TO <u>DEBTOR PROPERTY HELD IN THE NAME OF NONDEBTORS</u>

> **NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT U.S. COURTHOUSE, 501 TENTH STREET, FORT WORTH, TEXAS 76102 BEFORE CLOSE OF BUSINESS ON APRIL 7, 2025, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

Debtor Fossil Creek A2A Developments, LLC ("***Fossil Creek LLC***") and Debtor Windridge A2A Developments, LLC ("***Windridge LLC*** together with Fossil Creek LLC, the *"**Debtors**"*) hereby file this *Motion for Entry of an Order (i) Confirming the Automatic Stay Applies to All Assets of the*

Page 1

LEGAL*67705332.3

*Debtors Wherever Located; (ii) Extending the Automatic Stay to Debtor Property Held in the Name of Nondebtor Entities, or (iii) in the Alternative Imposing the Automatic Stay to Debtor Property Held in the Name of Nondebtors* (the "**Motion**"). In support of this Motion, the Debtors respectfully states as follows:

## I.
## RELIEF REQUESTED

1. Based on the information presently available to the Foreign Representative, the Foreign Representative believes that certain assets presently titled in the Trails of Fossil Creek Properties LP ("**Fossil Creek LP**") and Hills of Windridge LP ("**Windridge LP**") were originally owned by the above-captioned Debtors and were fraudulently transferred from the Debtors. As a result, those assets (together with the proceeds from the sale of certain of those assets, collectively, the "**Disputed Assets**") are not presently titled in the name of the Debtors and therefore not explicitly under the protection of the automatic stay, 11 U.S.C. § 362(a). As explained below, the Foreign Representative has commenced these chapter 11 purposes for the purpose of recovering the Disputed Assets by all appropriate means, including by commencing an adversary proceeding to avoid the transfer of those assets as fraudulent transfers under 11 U.S.C. §§ 544 and 548 and recover such assets (and proceeds) pursuant to 11 U.S.C. § 550. This effort will take time, however, and in the interim the Foreign Representative believes it is critical to secure the Disputed Assets pending adjudication of their proper ownership.

2. By this Motion, therefore, the Debtors request that entry of an order, pursuant to 11 U.S.C. §§ 105(a), 362(a), and 541(a), declaring that the automatic stay extends to the Disputed Assets presently held in the name of Fossil Creek LP and Windridge LP or, in the alternative, imposing an injunction under § 105(a) to comparable effect.

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction over this Motion. 28 U.S.C. §§ 157, 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory basis for the relief requested herein is §§ 105(a), 362, and 541 of title 11 of the United States Code (the "**Bankruptcy Code**").[1]

## III.
## BACKGROUND

**A. Procedural History**

5. On the date hereof (the "**Petition Date**"), Alvarez & Marsal Canada Inc. in its capacity as the duly appointed representative (the "**Foreign Representative**") of the above-captioned Debtors filed voluntary petitions in the Court commencing cases for relief under chapter 11 of the Bankruptcy Code.

6. These chapter 11 cases concern two residential development projects located in the Dallas/Fort Worth area that owned and operated by a family of related entities referred to herein as the "**A2A Group**." The two real estate projects are:

(a) Trails of Fossil Creek ("**Fossil Creek**"), which is advertised as a 93-acre residential home development with 487 single detached family homes located in Fort Worth, Texas; and

(b) The Hills of Windridge ("**Windridge**"), which is advertised as a 415-acre residential development in the Dallas/Fort Worth area.

7. Effective March 5, 2025, the Canadian Court entered a *Stay Extension & Miscellaneous Relief Order* (the "**March 5 Order**") approving

---

[1] Unless otherwise noted, section (§) references are to the Bankruptcy Code.

the "**Texas Plan**" as reasonable and authorizing the Monitor, as Foreign Representative,

> to take any and all steps that it deems necessary or desirable to implement the Texas Plan or otherwise gain control of the Fossil Creek Lot, the Windridge Lands, and the sale proceeds from the Water District Sale and the Fossil Creek Sale (each as defined in the Fourth Report) or any other assets of the US Debtor Companies discovered by the Monitor.

March 5 Order ¶ 3.

8. The Debtors are also concurrently the subject of a proceeding pending under Canada's Companies' Creditors Act, R.S.C. 1985, c. C-36 (as amended, the "***CCAA***") in the Court of King's Bench of Alberta, Judicial Centre of Calgary (the "***Canadian Proceeding***" and such court, the "***Canadian Court***"). As part of the Canadian Proceeding, the Foreign Representative also caused the Debtors and certain of their affiliates to commence ancillary cases under chapter 15 of the Bankruptcy Code in support of the Canadian Proceeding as a foreign main proceeding.[2]

**B.    Fossil Creek**

9. Fossil Creek was acquired by debtor Fossil Creek LLC on or about August 20, 2013. In and around 2014, undivided fractional interests ("***UFIs***") in Fossil Creek were marketed and sold to offshore investors through unknown offshore investment instruments. Canadian investors were sold investment instruments by way of purchase units of the Fossil Creek A2A Trust, a trust governed by the laws of Alberta, Canada. Proceeds of the sale of units in Fossil Creek A2A Trust, were used to purchase partnership units in Fossil Creek A2A Limited Partnership, a limited partnership formed under the laws of Alberta, Canada, which limited partnership subsequently purchased UFIs in the Fossil Creek development on January 9, 2015. Given the unusual nature of these transactions, the Foreign Representative has

---

[2] The chapter 15 cases are pending in the Northern District of Texas under the jointly administered Case No. 24-44299.

reason to believe that evidence may show the entire investment scheme to have been orchestrated for fraudulent purposes.

10. On December 15, 2014, the co-owners of the Fossil Creek real property voted to transfer their UFIs to the Fossil Creek Trust with Dirk Foo as trustee. The transfer of Fossil Creek real property to the Fossil Creek Trust may have been done for a fraudulent purpose.

11. Upon information and belief, at some point between 2014 and 2024, portions of Fossil Creek were platted and individual lots were subsequently sold. These transfers of the individual lots of Fossil Creek may constitute fraudulent transfers. Additionally, it is unclear whether the lots were sold to *bona fide* purchasers for value.

12. In 2024, the vast majority of the remaining Fossil Creek real property was transferred to Fossil Creek LP, for the purported purpose of facilitating the sale of the Fossil Creek real property. Upon information and belief, the sole limited partner of Fossil Creek LP is Dirk Foo as trustee of the Fossil Creek Trust and, until recently, the general partner of Fossil Creek LP was Fossil Creek LLC. Upon information and belief, Fossil Creek LLC ceased to be general partner of Fossil Creek LP following the commencement of its chapter 15 case in this Court, and Soaring Hill, LLC, was appointed its general partner on or about March 4, 2025.

13. On or about September 27, 2024, Fossil Creek LP sold the Fossil Creek real property to Bloomfield Homes LP for $4,287,000 (the "**Fossil Creek Sale**"). These proceeds from the Fossil Creek Sale (the "**Fossil Creek Proceeds**") are currently held in a bank account in the name of Fossil Creek LP at JPMorgan Chase ("**Chase**"). Upon information and belief, the funds from the Fossil Creek Sale constitute property of the debtor Fossil Creek LLC.

14. The Monitor is further informed that there remains one individual unsold lot within Fossil Creek (the "**Fossil Creek Lot**"), title to which appears to be vested to Dirk Foo, as trustee of the Fossil Creek Trust.

Page 5

### C. Windridge

15. Windridge was acquired by the Windridge LLC on or about May 31, 2012. In and around 2013 UFIs in Windridge were marketed and sold to offshore investors through unknown offshore investment instruments. Canadian investors were sold investment instruments by way of purchase of units of the Hills of Windridge A2A Trust (the "***Windridge Trust***"), a trust governed by the laws of Ontario, Canada. Proceeds from the purchase of unites in Hills of Windridge A2A Trust, were used to purchase partnership units in Hills of Windridge LP, a limited partnership formed under the laws of Ontario, Canada, which subsequently purchased UFIs in the Windridge development on March 20, 2014.

16. Upon information and belief, the sole limited partner of Windridge LP is Dirk Foo as trustee of the Windridge Trust and, until recently, the general partner of Windridge LP was Windridge LLC. Upon information and belief, Windridge LLC ceased to be general partner of Windridge LP following the commencement of its chapter 15 case in this Court, and Soaring Hill, LLC, was appointed its general partner on or about March 4, 2025.

17. On April 8, 2014, the co-owners of the Windridge real property voted to transfer their UFIs to the Hills of Windridge Trust, a revocable trust governed by the laws of Texas, with Dirk Foo as trustee. The transfer of Windridge real property to the Fossil Creek Trust may have been done for a fraudulent purpose.

18. At some point in the period between 2014 and 2024, portions of Windridge were platted and individual lots were subsequently sold. Upon information and belief <u>most</u> purchasers of the individual lots are *bona fide* purchasers for value. However, in 2022, Windridge LLC transferred real property via eight deeds to a limited partnership, Serene Senedra Ranch (the "***Serene Deeds***"). Serene Sendera Ranch LP ("***Serene LP***") is a related party to the debtor Windridge LLC.

Page 6

19. The Foreign Representative is unaware of any consideration paid for the transfers made by Windridge LLC to Serene LP. The Foreign Representative is informed that Allan Lind, who executed the Serene Deeds, claims that the transfers were made in error, but a subsequent deed conveying one of the lots to Allan Lind's son suggests the purpose of the Serene Deeds may have been fraudulent.

20. In 2024, a portion of the Windridge real property was transferred to Windridge LP for the purpose of facilitating the sale of that portion of the Windridge real property to the Tarrant Regional Water District (the "**TRWD**"). According to the May 21, 2024 minutes of a meeting of the Board of Directors of the TRWD, the appraised value of the property sold pursuant to the water district sale (the "**Water District Sale**") was $2,693,000. A small portion of the proceeds from the Water District Sale (the "**Windridge Proceeds**") are currently held in a bank account owned by Windridge LP at Chase, but the Foreign Representative has not yet been able to ascertain the location of the balance of the Windridge Proceeds.

D. **The Chase Accounts**

21. On January 27, 2025, the Foreign Representative sent a letter to Chase requesting the bank freeze all withdrawals and transfers from any and all accounts held by Chase and owned by Fossil Creek LLC, Windridge LLC, Windridge LP and Fossil Creek LP. Chase subsequently advised the Foreign Representative that a hold had been placed on three specific accounts holding present balances in the aggregate amount of $2,796,460.80, as follows:

| Account No. | Account Owner | Current Balance |
|---|---|---|
| 8095 | Trails of Fossil Creek Properties LP | $2,791,065.98 |
| 6728 | Hills of Windridge LP | $5,294.82 |
| 7680 | Hills of Windridge LP | $100.00 |

22. The Foreign Representative has no additional information at this time on the location or disposition of the other Fossil Creek Proceeds and Windridge Proceeds.

## IV.
## BASIS FOR RELIEF

23. Fifth Circuit precedent provides that the automatic stay may apply to property in the possession of a nondebtor that arguably belongs to the debtor's estate pending a resolution of the dispute in question. Accordingly, the Debtors request the Court enter an order affirming the application of the automatic stay to certain assets nominally held in the name of nondebtors Fossil Creek LP and Windridge LP—but properly belonging to the Debtors—so that such assets can be preserved for the benefit of the estate.

**A.  The automatic stay applies to all of the Debtors' assets, including assets concealed in the name of nondebtors Fossil Creek LP and Windridge LP.**

24. Section 362(a)(3) provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

25. "The purposes of the bankruptcy stay under 11 U.S.C. § 362 are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse." *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003); *see also Matter of Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, 1182 (5th Cir. 1986) ("The purpose of the automatic stay is to give the debtor a 'breathing spell' from [its] creditors, and also, to protect creditors by preventing a race for the debtor's assets."). Section 362(a) is worded to prevent "all entities" (not merely creditors) from engaging in certain acts including 'an act . . . to exercise control over property of the estate.'" *In re Three Strokes Ltd. P'ship*, 397 B.R. 804, 807 (Bankr. N.D. Tex. 2008)(citing 11 U.S.C. § 362(a)(3)). The automatic stay "is intended to

prevent dismemberment of the estate and allow a breathing spell for a debtor-in-possession." *Id*.

26. "The commencement of a case under section 301, 302 or 303 of this title creates an estate." 11 U.S.C. § 541(a). "Such estate is comprised of all the following property, *wherever located and by whomever held*, [including] all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. §541(a)(1) (emphasis added); *see also* H.R. Rep. No. 82-2320, at 15 (1952), reprinted in 1952 U.S.C.C.A.N. 1960, 1976 (Congress inserted the phrase "wherever located" into a predecessor of the current Bankruptcy Code "to make clear that a trustee in bankruptcy is vested with the title of the bankrupt in property which is located without, as well as within, the United States.").

27. The Fifth Circuit has broadly construed the scope of § 541(a)(1) and has described it as "all encompassing." *See e.g.*, *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1149 (5th Cir. 1987)("'all legal and equitable interests of the debtor in property' is all-encompassing . . ."); *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008) (holding that section 541(a)(1) should be construed "broadly"). The automatic stay operates as a "stay of certain actions in three categories: against the debtor, the debtor's property, and property of the bankruptcy estate." *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226, 230 (5th Cir. 2019).

28. The Fifth Circuit has held that the automatic stay also applies to property that arguably constitutes "property of the estate." *See Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 303 (5th Cir. 2005) (finding that the district court erred and violated the automatic stay when it resolved a post-seizure determination of an arguable property's characterization and defining arguable property as property of the estate where it was uncertain whether it was property of debtor or not at the time of foreclosure). As the Fifth Circuit noted in *Chesnut*, the "policy and structure of the Bankruptcy Code suggest that the stay covers at least some arguable property." *Id*. In the face of uncertainty or ambiguity, courts should presume the automatic stay protects

Page 9

arguable or disputed property pending the adjudication of any dispute concerning its rightful ownership. See id.

29. Therefore, as of the Petition Date, the automatic stay became effective against all property of the Debtors, including any disputed property. The filing of these cases granted this Court exclusive jurisdiction over such property. Likewise, any act that would trap or otherwise interfere with such property of the estate should be considered a violation of the automatic stay.

30. The Debtors assert that property of the estate exists within the Chase bank accounts held in the name of nondebtors Fossil Creek LP and Windridge LP. The ownership of the funds held in Chase is the subject of dispute between the Debtors, Fossil Creek LP and Windridge LP. Upon information and belief, the Debtors understand that estate property was fraudulently transferred prepetition from the Debtors to Fossil Creek LP and Windridge LP. Accordingly, the Debtors request entry of an order confirming that the automatic stay applies to estate property that is being held by Fossil Creek LP and Windridge LP until the Court can resolve the ownership dispute of the property. The Debtors are concerned in the absence of the automatic stay the disputed property will dissipate before this Court can resolve the ownership dispute.

**B.  Equitable grounds warrant the extension of the automatic stay to all disputed property of the estate.**

31. Even if the Court determines that the automatic stay does not apply to the disputed property held by Fossil Creek LP and Windridge LP, § 105 imbues this Court with the authority to extend the automatic stay to cover such property. A bankruptcy court has broad authority under § 105 to grant a stay and may use its equitable powers to ensure the orderly resolutions of bankruptcy cases. *See In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 348 (2d Cir. 1985). In pertinent part, § 105(a) allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See* 11 U.S.C. § 105(a).

32. Where a bankruptcy court issues a temporary injunction under § 105(a), the analysis is considered similar to a request for preliminary injunction, and the movant is required to prove "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction is not issued, (3) that the threatened harm exceeds any harm flowing from the injunction, and (4) that the injunction would serve the public interest." *Aremaco, Inc. v. Hardaway (In re Hardaway)*, 2007 Bankr. LEXIS 750, *3 (Bankr. S.D. Tex. Mar. 1, 2007) (citing *Landmark Land Co., Inc. v. Office of Thrift Supervision*, 990 F.2d 807 (5th Cir. 1993); *see also Commonwealth Oil Ref. Co. v. EPA (In re Commonwealth Oil Ref. Co.)*, 805 F.2d 1175, 1188 (5th Cir. 1986) (observing that "the legislative history of § 105(a) makes clear that stays under that section are granted only 'under the usual rules for the issuance of an injunction'"). Of these, the first two factors—the likelihood of success and the threat of irreparable harm to the movant—"are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

### i. *Likelihood of Success on the Merits*

33. The focus of the inquiry of the "likelihood of success" element is on the "purpose of the requested injunction." *In re FiberTower Network Servs. Corp.*, 482 B.R. 169, 182 (Bankr. N.D. Tex. 2012). The crux of the inquiry is "whether this court is authorized and likely to grant the requested relief." *FiberTower*, 482 B.R. at 183; *see also* Collier on Bankruptcy ¶ 105.03[1][a] (16th ed. 2012) ("In connection with the 'likelihood' argument, many courts have looked to the purpose of the requested injunction . . . the likelihood of success argument will track closely the bankruptcy right sought to be vindicated.").

34. In the context of a chapter 11 case, this first element typically centers on whether there is a reasonable likelihood of a successful reorganization. *See, e.g.*, *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1095 (9th Cir. 2007) ("We hold that a debtor seeking to stay an action against a non-debtor must show a reasonable likelihood of a successful reorganization."); *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 386 B.R. 17, 32-33 (Bankr. D. Del. 2008); *Nev. Power Co. v. Calpine Corp.*

Page 11

*(In re Calpine Corp.)*, 365 B.R. 401, 409 (S.D.N.Y. 2007); *Archambault v. Hershman (In re Archambault)*, 174 B.R. 923, 934 (Bankr. W.D. Mich. 1994).

35. Here, the Debtors submit that their prospect for establishing their rightful ownership of the Windridge and Fossil Creek properties is strong. Upon information and belief, the disputed assets currently held by Windridge LP and Fossil Creek LP were fraudulently transferred without the Debtors consent. Additionally, it is likely that the funds held in the Chase accounts are property of the Debtors' estate. In short, the Debtors are likely to successfully prove its ownership of the disputed assets. Accordingly, the Debtors are likely to succeed on the merits of its claims.

### ii. *Absent relief, the Debtors face a substantial risk of irreparable harm*

36. The threat of irreparable harm to the movant is of critical consideration to the issuance of temporary injunctive relief, and here that threat of harm is manifest. As matters stand, the Disputed Assets are currently held in the name of entities other than those in which the investors originally invested, and proceeds have been generated and unequally to some investors but not others.

37. In the words of the Canadian Court in its *Reasons for its Decision* (the "**January Reasons**") issued in support of its January 29, 2025 order extending the "stay period" in the Canadian Proceeding, the Debtors—under their prior management—suffered from a historical failure to keep and maintain accurate books and records and to "fully account for the sources and uses of funds of the A2A Group."

38. Further, title reports issued on Fossil Creek and Windridge indicate that—absent a proper adjudication and determination of their proper ownership—the Disputed Assets are unsaleable in their current condition. These title reports reflect hundreds if not thousands of restrictive covenants recording the fractional interests (as small as 1/4412th interest) of various purported purchasers in Fossil Creek and Windridge. The Windridge title

Page 12

report along lists another 276 items that need to be addressed in order for a title company to insure title to Windridge.

39. In short, there is a desperate need to bring order to the chaos of ownership surrounding title to the Disputed Assets. The Foreign Representative believes that a properly-filed adversary proceeding supported by fulsome discovery will both bring clarity to the ownership of the Disputed Assets and establish that the Disputed Assets properly belong—as avoidable transfers or otherwise—to the Debtors and their creditors and investors.

40. Absent the requested relief, however, the Disputed Assets—and especially the Fossil Creek and Windridge Proceeds—are vulnerable to further transfers or conveyances intended to spirit them away from their lawful owners and beneficiaries.

41. Accordingly, the Debtors' estates will suffer severe consequences if the stay is not extended to the Disputed Assets to ensure the preservation of their respective status quo pending such determinations.

### iii. *The potential harm to the Debtors far outweighs any prejudice to Fossil Creek LP and Windridge LP*

42. Conversely, Fossil Creek LP and Windridge LP will suffer little or no prejudice as the result of any stay imposed by this Court. To the contrary, if they truly believe themselves the rightful owner of any of the Disputed Assets, they should welcome the chance to investigate and resolve those issues in a single, common forum. If they know they are not the rightful owners of those assets, then almost by definition there can be no prejudice in staying any further attempt to sell, convey, or otherwise dispose of those assets pending adjudication of the Disputed Assets' rightful ownership. In the meantime, the issuance of the requested injunction will preserve the status quo for the benefit of *all* possible stakeholders pending a proper adjudication of these disputed issues.

### iv. *Injunctive relief will further the public interest*

43. "In bankruptcy, the public policy is to have an orderly administration of the debtor's assets via their bankruptcy estate, such that the debtor may be able to gain a fresh start, by satisfying valid claims against that estate." *Villarreal v. N.Y. Marine & Gen. Ins. Co. (In re OGA Charters, LLC)*, 554 B.R. 415, 426 (Bankr. S.D. Tex. 2016)(citing *In re Lots by Murphy, Inc.,* 430 B.R. 431, 436 (Bankr. S.D. Tex. 2010)). Injunctions serve this interest when preventing the dissipation of estate assets. *See OGA Charters*, 554 B.R. at 426. Preventing the dissipation of potential assets belonging to the debtor that, pursuant to 11 U.S.C. § 541, may be brought into the bankruptcy estate may be in the public interest, in general. See id. The issuance of an injunction will protect the public interest by preventing the potential depletion of estate property that is in the possession of Fossil Creek LP and Windridge LP.

44. On such basis, the Debtors request entry of an order declaring that the automatic stay extends to the Disputed Assets presently held in the name of Fossil Creek LP and Windridge LP or, in the alternative, imposing an injunction under § 105(a) to comparable effect.

**WHEREFORE**, the Debtors respectfully request that the Court enter the proposed Order, substantially in the form attached hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: March 17, 2025
Dallas, Texas

Respectfully submitted,

REED SMITH LLP

*/s/ Michael P. Cooley*
Keith M. Aurzada (TX. Bar No. 24009880)
Michael P. Cooley (TX. Bar. No. 24034388)
Taylre C. Janak (TX. Bar No. 24122751)
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75201
(469) 680-4200
kaurzada@reedsmith.com
mpcooley@reedsmith.com
tjanak@reedsmith.com
***Proposed* Counsel for the Debtors**

## CERTIFICATE OF SERVICE

I certify that on March 17, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Michael P. Cooley*
Michael P. Cooley